## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KARL JACOBS | CIVIL ACTION |
| VERSUS | NO. 13-0146 |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA, ET AL. | SECTION "L" (3) |

### ORDER & REASONS

Pending before the Court are Defendants Prudential Insurance Company of America's and Lockheed Martin Corporation's motions to dismiss (Rec. Docs. 30, 31). Having reviewed the applicable law and memoranda, the Court now issues this order and reasons.

## I.    BACKGROUND

This case arises from work-related injuries. Plaintiff Karl Jacobs, an employee of Lockheed Martin, alleges that he was working on a large x-ray machine in 1993 when someone started it, forcing him to "get out or be crushed." (Rec. Doc. 23 at 2). In the process, his right leg "went through a hole," injuring both his right knee and lower back. (*Id.*). Mr. Jacobs' alleges that his doctor told him he needed immediate surgery, but that the Lockheed Martin foreman, Richard Ray, and supervisor, Guy Jackson, responded that, "if [he] had the surgery, [he] would be demoted to cleaning sewer lift pumps . . . ." (*Id.*). As a result of "fear, coercion, and intimidation," he elected not to have the surgery and returned to work. (*Id.*).

Mr. Jacobs also alleges that on May 16, 2001, he was again injured when an employee he was training "turned on [the] machine without proper safety precautions" and that it "was wired incorrectly . . . ." (*Id.*). Specifically, the machine was activated "without the required Functional Check Out and Operational Readiness Inspection . . . ." (*Id.*). The machine struck Mr. Jacobs repeatedly, before another employee disconnected the power source. (*Id.*). He alleges that this

caused "a major hematoma to [his] chest, leg area and multiple injuries to [his] left knee and both shoulders and neck strain." (*Id.*). Lockheed Martin's doctor, Marleece Barber, ordered a chest x-ray, then prescribed pain medication and instructed Mr. Jacobs "to return to work the next day on light duty . . . ." (*Id.* at 3). Mr. Jacobs further alleges that Dr. Barber instructed him "NOT to go to his own doctor as 'I will be your physician in this matter or you will lose your job . . . .'" (*Id.*).

Mr. Jacobs nonetheless went to his doctor on June 14, 2001, and was referred to an orthopedic surgeon . The surgeon "found many problems" and "attempted to put [him] on total disability." (*Id.*). However, Mr. Jacobs alleges that Lockheed Martin "refused to accept [the orthopedic surgeon's] recommendation, instead telling [him] to come to work on light duty or basically be terminated." (*Id.*). Mr. Jacobs states that he "tried to work, under threat of termination," and that he would "tak[e] vacation days and sick days on [those] days he just couldn't take the pain even with all the pain pills provided by Dr. Barber." (*Id.*). He also underwent physical therapy. His doctor "tried unsuccessfully many times" to have surgery approved, but Lockheed Martin's doctors "disapproved" or "denied [Mr. Jacobs] access" to the treatment. (*Id.*). Further, Dr. Barber told Mr. Jacob's doctor "to lift [the] restrictions [he had placed] or [Mr. Jacobs] would be terminated." (*Id.*). After an "arbitration process," Mr. Jacobs eventually underwent surgery. (*Id.*). His recovery lasted from mid-2002 until early-2004.

At some point during or after this period, Mr. Jacobs attempted to return to work but was told "'there is no work for you at this facility.'" (*Id.*). He then contacted a Lockheed Martin benefits advisor, Suzette Archie, who told him that he was not eligible for further coverage or benefits beyond what he was receiving. Without these benefits, he states that he withdrew from or borrowed against a retirement account to pay his mortgage, feed his family, and pay "bills that had accumulated while [he] was out of work." (*Id.*).

2

In 2004, the Social Security Administration ("SSA") determined that Mr. Jacobs had been "totally disabled" during the period he was out of work from mid-2002 until early-2004 and it paid benefits retroactively. (*Id.*). Mr. Jacobs returned to Lockheed Martin under the SSA's return-to-work program, however Mr. Jackson "determined he could no longer do [his job] and tried to fire him . . . ." (*Id.* at 4). However, because of his "outstanding performance and many awards prior to his accident," he was instead terminated with medical retirement benefits and full, long-term disability. In 2007, Mr. Jacobs learned that the SSA's determination also entitled him to special accident coverage and medical retirement benefits from Lockheed Martin for the same period. Upon filing a claim, it was denied as untimely.

As an employee, Mr. Jacobs participated in Lockheed Martin's group benefits plan, which is governed by the Employee Retirement Income Security Act ("ERISA"). Under the plan, Mr. Jacobs received special accident coverage for permanent and total disability, which pays for an eligible employee's disability that results from a work-related accident. (Rec. Doc. 31-2). The insured employee may receive disability benefits provided that "beginning no later than 30 days after the covered accident, [the insured is] unable to perform the duties of the job for one year" and after that year is "unable to work at any job suitable to [the insured's] education, training or experience . . . ." (*Id.*). Eligibility for benefits under this provision is contingent on the employee filing a claim within "30 days after a covered loss occurs or starts." (Rec. Doc. 31-3).

Although, as noted above, Mr. Jacobs was involved in injuries in 1993 and 2001, he did not file a claim for permanent and total disability benefits until July 19, 2009. (Rec. Doc. 31-4). That claim was denied on January 25, 2010, because Mr. Jacobs had exceeded the 30 days' notice required by the policy. Specifically, Prudential noted that Mr. Jacobs had become totally and permanently disabled on September 1, 2007, when he had "officially retired" and that his disability was unrelated to the work-related injuries he sustained in 2001. (*Id.*). It also concluded

3

that the "loss did not begin within 30 days of the May 16, 2001 accident." (*Id.*). Mr. Jacobs then appealed the denial of benefits, and on March 15, 2011, Prudential upheld the denial. (Rec. Doc. 31-6). He then filed a final appeal, and on January 26, 2012, that too was denied. (Rec. Doc. 31-7).

On January 25, 2013, Mr. Jacobs filed the present action *pro se* in this Court. (Rec. Doc. 1). Lockheed Martin and Prudential then filed separate motions for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). (Rec. Docs. 9, 18). Mr. Jacobs filed an amended complaint on July 1, 2013, asserting the factual circumstances described above and seeking benefits and coverage under the plan as a result of his total and permanent disability. He attests that he has exhausted any required administrative remedies. Mr. Jacobs alleges that he relied, to his detriment, on Lockheed Martin's erroneous representations. Specifically, he alleges that he was told he was ineligible for coverage and benefits during a period in which he believes he was eligible and could have made a timely request. Mr. Jacobs also alleges that he was not sent or provided information he had requested. In sum, he asserts that his efforts to obtain coverage and benefits to which he was entitled were thwarted by both Lockheed Martin and Prudential. As a result, he seek to recover the benefits and coverage allegedly owed to him for the period beginning in 2001, when his doctor determined he was totally disabled, through 2007, when he was terminated; benefits and coverage owed for the period beginning in 2002 through 2004, when he was receiving medical treatment; repayment of loans and interest on those loans made during periods he should have received benefits or coverage; loss of future earnings; punitive damages, and attorneys' fees and costs.

## II.   PRESENT MOTIONS

Pending before the Court are Prudential's and Lockheed Martin's motions to dismiss. (Rec. Docs. 30, 31). Lockheed Martin argues that each of Mr. Jacobs' claims against it are either

prescribed or preempted by ERISA. It interprets Mr. Jacobs' amended complaint to assert claims for payment of medical retirement benefits during his recovery from surgery, repayment or reimbursement of $4,800 allegedly removed from his retirement account, repayment or reimbursement of loans including interest and a 401(k) hardship withdrawal, damages for loss of future earnings, damages for physical and mental pain and suffering, and attorneys' fees and costs. Prudential likewise argues that Mr. Jacobs' claims against it are prescribed.

Mr. Jacobs responds, but does not directly address the substantive legal issues presented.[1] (Rec. Doc. 36). The crux of Mr. Jacobs' argument is that he is entitled to benefits under the plan as a result of the 2001 work-related accident. Specifically, he argues that he became totally and permanently disabled at that point and only continued working because of his "fear of termination" and his "legal incompetence." (*Id.*).

Lockheed Martin replies to Mr. Jacobs, arguing that he has not addressed any of the issues raised by its motion to dismiss and that Mr. Jacob's inclusion of doctor's progress notes, which are neither signed by the doctor nor authenticated, are inadmissible. (Rec. Doc. 39). Mr. Jacobs further replies arguing that the progress notes should be included because they evince the difficulties he faced dealing with Lockheed Martin's benefits department. (Rec. Docs. 45, 49).

## III.   LAW & ANALYSIS

### A.    Standard

When a court considers a motion to dismiss for a party's failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a

---

[1] Mr. Jacobs, who proceeds *pro se*, has included a significant amount of information that is irrelevant to the motions presently before the Court.

claim to relief that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, (2009)). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). In making its determination, a court may consider, "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see* FED. R. CIV. P. 10(c)

However, "[g]enerally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). "Such error may be ameliorated, however, if the plaintiff has alleged his best case, or if the dismissal was without prejudice." *Id.* (footnotes omitted). For instance, a district court does not err where "even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would subject the present defendants to liability." *Jacquez v. Procunier*, 801 F.2d 789, 791–92 (5th Cir. 1986). Here, Mr. Jacobs seeks recovery from both Prudential and Lockheed Martin, and his claims against each are considered in turn.[2]

### B.   ERISA CLAIMS

As a preliminary matter, it is necessary to determine whether Mr. Jacobs' claim for benefits against Prudential and Lockheed is barred because it is untimely.[3] "Under ERISA, a

---

[2] The Court adopts the characterization of Mr. Jacobs' claims proposed by Prudential and Lockheed Martin.

[3] Mr. Jacobs broadly alleges that he is entitled to benefits and to the repayment of loans he took out and withdrawals he made during the period he was out of work. Having considered his allegations, it is clear that they all derive from an underlying claim for benefits under his ERISA plan. Accordingly, they are considered as such.

cause of action accrues after a claim for benefits has been made and formally denied." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005). In the absence of any specific limitations period in ERISA, "state law principles of limitation" apply unless "a plan designates a reasonable, shorter time period," in which case "the lesser limitation schedule governs." *Id.*

According to the plain language of the plan, Mr. Jacobs was required to bring this action within six years "from the time written proof of loss is required to be furnished." (Rec. Doc. 31-2 at 24). Mr. Jacobs' claim is for permanent and total disability benefit. An employee is entitled to such a benefit, provided that they are unable to perform the duties for a period beginning within 30 days of the accident and lasting one year. (*Id*. at 14). "Written notice of claim must be given within 30 days after a covered loss occurs or starts, or as soon after that as possible." (*Id.* at 23). Further, "written proof of loss must be given within 90 days after the date of loss." (*Id.*). "Except in the event of legal incompetence, this extension of the time limit shall in no event exceed one year." (*Id*.). As noted above, Mr. Jacobs was injured on May 16, 2001. As defined by the policy, his loss would have materialized on June 16, 2002, within one year and thirty days after the injury. He would have been required to provide written proof of loss by June 16, 2003, one year after the loss. He would then have had to commence a cause of action by June 16, 2009, six years after proof of loss was required.

However, it is necessary to consider whether this limitation period should be presumed to apply even though it begins at the date proof of loss was required, not at the date that the claim was denied. Although the Fifth Circuit has not reached this issue directly, it has noted that the Untied States Court of Appeals for the Fourth Circuit "has held that a limitations period that begins to run before the ERISA cause of action accrues is unreasonable *per se*." *Baptist Mem'l Hospital—DeSoto Inc. v. Crain Auto. Inc.*, 392 F. App'x 288, 295 n.1 (5th Cir. 2010) (citing

*White v. Sun Life Assur. Co.*, 488 F.3d 240, 247 (4th Cir. 2007)). In doing so, it further acknowledged that the United States Courts of Appeals for the Second, Sixth, Eighth, and Tenth Circuits have rejected that approach, "opting instead to consider reasonableness on a case-by-case basis-even when the limitations period begins to run before a cause of action accrues." *Id.* (collecting cases). However, even in dicta it declined to adopt either position. Adhering to the general rule that a claim under ERISA accrues after the denial of a claim for benefits, the Court finds that Mr. Jacobs' cause of action began to accrue at the point his claim was denied, not from the date proof of loss was due. Thus, his cause of action is not barred by the limitations period because it was filed less than one year after his claim had been denied.

Although Mr. Jacobs is not barred by any limitations period, it is possible that his cause of action is barred by the language of the plan. "ERISA provides federal courts with jurisdiction to review benefit determinations by fiduciaries or plan administrators." *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 520–21 (5th Cir. 2000). "Consistent with established principles of trust law, a denial of benefits challenged under [ERISA § 502(a)(1)(B)] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 521. "A claim is filed when the requirements of a reasonable claim filing procedure of a plan have been met." *Id.* at 523. However, this is not an inflexible requirement.

Here, the terms of the plan are clear with regard to when a notice of claim and proof of loss must be filed. Assuming that Mr. Jacobs became totally and permanently disabled within one year and 30 days of his injury, he was required to provide a notice of claim and proof of loss within two years of the date he was injured. Nearly eight years after he was injured and six years after the notice of claim and proof of loss were due, he filed a notice of claim. Mr. Jacobs does not dispute that he waited so long to file the notice of claim and proof of loss. However, "[a]n

insured's failure to submit timely written notice and proof of his claim, does not necessarily invalidate his claim to benefits." *Id*. at 525. For instance, "[a] state's notice-prejudice rule, under which an insurer must show that it was prejudiced by an insured's failure to give timely notice of a claim, may 'regulate insurance' within the meaning of ERISA's saving clause and, thus, escape preemption by ERISA." *Id*. Further, the plan allows a proof of loss to be submitted after one year in the event of legal incompetence. Thus, the mere fact that his notice of claim and proof of loss were untimely does not alone preclude him from proceeding.[4]

For this reason, Mr. Jacobs' ERISA claim is not extinguished. Although it survives at this stage, it must be recognized that Mr. Jacobs' faces a significant—if not impossible—hurdle. When considering a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), *all* facts are considered in a light most favorable to the plaintiff. However, when considering a motion for summary judgment brought pursuant to Rule 56, only *contested* facts are considered in such a light. Without reaching the issue, Mr. Jacobs will likely have the burden of demonstrating that his claim should not be barred by the terms of the plan. Mr. Jacobs' failure to adhere to the claims procedures may very well bar recovery, but that issue is more properly decided after having considered the administrative record.[5] (*Id. at* 526 (upholding the denial of an untimely filed claim only after reviewing the administrative record).

### C.    State Law Claims

Next, it is necessary to consider each of the claims Mr. Jacobs asserts against Lockheed Martin. First, Mr. Jacobs alleges that the corporation took $4,800 from his retirement and that it

---

[4] Mr. Jacobs has also requested damages for mental and physical pain and suffering. The Fifth Circuit has held that ERISA does not allow punitive damages. *See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1462-3 (5th Cir. 1986). It has noted that "[t]he legislative history of ERISA supports the view that punitive damages do not fit within the category of 'equitable or remedial' relief." *Id*. at 1463. Mr. Jacobs has not offered any authority to the contrary.
[5] In this regard, the parties will be instructed to identify for the Court those parts of the record that are relevant.

should be returned to him. Under Louisiana law, the "tort of conversion . . . is a delictual action governed by a one year prescription." *Trust for Melba Margaret Schwegmann v. Schwegmann Family Trust*, 51 So. 3d 737, 741, 09-968, 3926, 6 (La. Ct. App. 2010). Because Mr. Jacobs' alleges that the $4,800 was taken from him in 2007, this claim is prescribed.

Second, Mr. Jacobs alleges that he is entitled to an award of loss of future earnings. However, Mr. Jacobs has been receiving long-term disability since 2007 on the basis that he is unable to work. Additionally, "[a]n action for the recovery of wages or salaries is subject to the liberative prescription of three years[, which] begins from the day payment is due, even if there is a continuation of labor or services." *Groom v. Energy Corp. of Am., Inc.*, 650 So. 2d 324, 326 (La. Ct. App. 1995). Thus, this claim must also be dismissed.

## IV.   CONCLUSION

For the forgoing reasons, **IT IS ORDERED** that Lockheed Martin's and Prudential's motions to dismiss (Rec. Docs. 30, 31) are **GRANTED IN PART** and **DENIED IN PART** and that Mr. Jacobs claims for conversion and loss of future earnings are **DISMISSED.**

New Orleans, Louisiana, this 25th day of March, 2014.

UNITED STATES DISTRICT JUDGE