UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KARL JACOBS | CIVIL ACTION |
| VERSUS | NO. 13-0146 |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA, ET AL. | SECTION "L" (3) |

## ORDER & REASONS

Pending before the Court are Defendants Prudential Insurance Company of America's and Lockheed Martin Corporation's motions for reconsideration (Rec. Decs. 55, 57) of the denial of their motions to dismiss (Rec. Doc. 53). Having reviewed the applicable law and memoranda, the Court now issues this order.

### I.     BACKGROUND

This case arises from work-related injuries. Plaintiff Karl Jacobs, an employee of Lockheed Martin, alleges that he was working on a large x-ray machine in 1993 when someone started it, forcing him to "get out or be crushed." (Rec. Doc. 23 at 2). In the process, his right leg "went through a hole," injuring both his right knee and lower back. (*Id.*). Mr. Jacobs' alleges that his doctor told him he needed immediate surgery, but that the Lockheed Martin foreman, Richard Ray, and supervisor, Guy Jackson, responded that, "if [he] had the surgery, [he] would be demoted to cleaning sewer lift pumps . . . ." (*Id.*). As a result of "fear, coercion, and intimidation," he elected not to have the surgery and returned to work. (*Id.*).

Mr. Jacobs also alleges that on May 16, 2001, he was again injured when an employee he was training "turned on [the] machine without proper safety precautions" and that it "was wired incorrectly . . . ." (*Id.*). Specifically, the machine was activated "without the required Functional

Check Out and Operational Readiness Inspection . . . ." (*Id.*). The machine struck Mr. Jacobs repeatedly, before another employee disconnected the power source. (*Id.*). He alleges that this caused "a major hematoma to [his] chest, leg area and multiple injuries to [his] left knee and both shoulders and neck strain." (*Id.*). Lockheed Martin's doctor, Marleece Barber, ordered a chest x-ray, then prescribed pain medication and instructed Mr. Jacobs "to return to work the next day on light duty . . . ." (*Id.* at 3). Mr. Jacobs further alleges that Dr. Barber instructed him "NOT to go to his own doctor as 'I will be your physician in this matter or you will lose your job . . . .'" (*Id.*).

    Mr. Jacobs nonetheless went to his doctor on June 14, 2001, and was referred to an orthopedic surgeon . The surgeon "found many problems" and "attempted to put [him] on total disability." (*Id.*). However, Mr. Jacobs alleges that Lockheed Martin "refused to accept [the orthopedic surgeon's] recommendation, instead telling [him] to come to work on light duty or basically be terminated." (*Id.*). Mr. Jacobs states that he "tried to work, under threat of termination," and that he would "tak[e] vacation days and sick days on [those] days he just couldn't take the pain even with all the pain pills provided by Dr. Barber." (*Id.*). He also underwent physical therapy. His doctor "tried unsuccessfully many times" to have surgery approved, but Lockheed Martin's doctors "disapproved" or "denied [Mr. Jacobs] access" to the treatment. (*Id.*). Further, Dr. Barber told Mr. Jacob's doctor "to lift [the] restrictions [he had placed] or [Mr. Jacobs] would be terminated." (*Id.*). After an "arbitration process," Mr. Jacobs eventually underwent surgery. (*Id.*). His recovery lasted from mid-2002 until early-2004.

    At some point during or after this period, Mr. Jacobs attempted to return to work but was told "'there is no work for you at this facility.'" (*Id.*). He then contacted a Lockheed Martin benefits advisor, Suzette Archie, who told him that he was not eligible for further coverage or benefits beyond what he was receiving. Without these benefits, he states that he withdrew from

or borrowed against a retirement account to pay his mortgage, feed his family, and pay "bills that had accumulated while [he] was out of work." (*Id.*).

In 2004, the Social Security Administration ("SSA") determined that Mr. Jacobs had been "totally disabled" during the period he was out of work from mid-2002 until early-2004, and it paid benefits retroactively. (*Id.*). Mr. Jacobs returned to Lockheed Martin under the SSA's return-to-work program, however Mr. Jackson "determined he could no longer do [his job] and tried to fire him . . . ." (*Id.* at 4). However, because of his "outstanding performance and many awards prior to his accident," he was instead terminated with medical retirement benefits and full, long-term disability. In 2007, Mr. Jacobs learned that the SSA's determination also entitled him to special accident coverage and medical retirement benefits from Lockheed Martin for the same period. Upon filing a claim, it was denied as untimely.

As an employee, Mr. Jacobs participated in Lockheed Martin's group benefits plan, which is governed by the Employee Retirement Income Security Act ("ERISA"). Under the plan, Mr. Jacobs received special accident coverage for permanent and total disability, which pays for an eligible employee's disability that results from a work-related accident. (Rec. Doc. 31-2). The insured employee may receive disability benefits provided that "beginning no later than 30 days after the covered accident, [the insured is] unable to perform the duties of the job for one year" and after that year is "unable to work at any job suitable to [the insured's] education, training or experience . . . ." (*Id.*). Eligibility for benefits under this provision is contingent on the employee filing a claim within "30 days after a covered loss occurs or starts." (Rec. Doc. 31-3).

Although, as noted above, Mr. Jacobs was involved in injuries in 1993 and 2001, he did not file a claim for permanent and total disability benefits until July 19, 2009. (Rec. Doc. 31-4). That claim was denied on January 25, 2010, because Mr. Jacobs had exceeded the 30 days'

3

notice required by the policy. Specifically, Prudential noted that Mr. Jacobs had become totally and permanently disabled on September 1, 2007, when he had "officially retired" and that his disability was unrelated to the work-related injuries he sustained in 2001. (*Id.*). It also concluded that the "loss did not begin within 30 days of the May 16, 2001 accident." (*Id.*). Mr. Jacobs then appealed the denial of benefits, and on March 15, 2011, Prudential upheld the denial. (Rec. Doc. 31-6). He then filed a final appeal, and on January 26, 2012, that too was denied. (Rec. Doc. 31-7).

 On January 25, 2013, Mr. Jacobs filed the present action *pro se* in this Court. (Rec. Doc. 1). Lockheed Martin and Prudential then filed separate motions for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). (Rec. Docs. 9, 18). Mr. Jacobs filed an amended complaint on July 1, 2013, asserting the factual circumstances described above and seeking benefits and coverage under the plan as a result of his total and permanent disability. He attests that he has exhausted any required administrative remedies. Mr. Jacobs alleges that he relied, to his detriment, on Lockheed Martin's erroneous representations. Specifically, he alleges that he was told he was ineligible for coverage and benefits during a period in which he believes he was eligible and could have made a timely request. Mr. Jacobs also alleges that he was not sent or provided information he had requested. In sum, he asserts that his efforts to obtain coverage and benefits to which he was entitled were thwarted by both Lockheed Martin and Prudential. As a result, he seeks to recover the benefits and coverage allegedly owed to him for the period beginning in 2001, when his doctor determined he was totally disabled, through 2007, when he was terminated; benefits and coverage owed for the period beginning in 2002 through 2004, when he was receiving medical treatment; repayment of loans and interest on those loans

4

made during periods he should have received benefits or coverage; loss of future earnings; punitive damages, and attorneys' fees and costs.

Prudential and Lockheed Martin then moved to dismiss. (Rec. Docs. 30, 31). They argued that each of Mr. Jacobs' claims were either prescribed or preempted by ERISA. On March 26, 2014, the Court entered an order granting Prudential's and Lockheed Martin's motions to dismiss with regard to the state law claims and denying it with regard to the ERISA claim. (Rec. Doc. 53). Specifically, the Court held that Mr. Jacobs' ERISA claim was not necessarily barred by a contractual, six-year limitations period that ran from the point that proof of loss was required. (*Id*. at 6-7). It based this determination on the United States Court of Appeals for the Fifth Circuit practice that "[u]nder ERISA, a cause of action accrues after a claim for benefits has been made and formally denied." (*Id*. (quoting *Harris Methodist Fort Worth v. Sales Support Services. Inc. Employee Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005)). It also noted persuasive precedent that "a limitations period that begins to run before the ERISA cause of action accrues is unreasonable *per se*." (*Id.* at 7-8 (quoting *Baptist Mem'l Hospital—DeSoto Inc. v. Crain Auto. Inc.*, 392 F. App'x 288, 295 n.1 (5th Cir. 2010)). In deciding that it would not be appropriate to dismiss Mr. Jacobs' claims on a Federal Rule of Civil Procedure 12(b)(6) motion, the Court observed that he faces a "significant—if not impossible—hurdle" on a Rule 56 motion, at which point the timeliness of his claim could be reevaluated. (*Id*. at 9).

## II.    PRESENT MOTIONS

Prudential and Lockheed Martin now move for reconsideration. (Rec. Docs. 55, 57). Specifically, they argue that the United States Supreme Court's decision in *Heimeshoff v. Hartford Life & Accident Insurance Co.*, 134 S. Ct. 604 (2013)—which was issued after the submission date for its motion to dismiss—changed the controlling law with regard to

5

contractual limitations periods in ERISA plans. (Rec. Doc. 55-1 at 1). They assert that, because a contractual limitations period may be valid even if it starts to run before the cause of action accrues, the contractual, six-year limitations period at issue here necessarily bars Mr. Jacobs' ERISA claim. Additionally, Lockheed Martin asserts that the issue of Mr. Jacobs' "legal incompetence" is irrelevant because he has not alleged that he is—or was at any time—unable to act on his own behalf. (Rec. Doc. 57-1 at 4). Mr. Jacob responds. (Rec. Docs. 58, 59). He argues that he "tried multiple times in a timely manner to apply for his accidental insurance and was repeatedly denied, especially during the time frame of 2003, . . . as he was unable to contact anyone to help him while he was going through the five surgeries during that time period." (Rec. Doc. 59; *see* Rec. Doc. 58). Further, he argues that Prudential and Lockheed Martin are "trying to use an unrelated case . . . and this case should be tried on its own individual mitigating circumstances." (Rec. Doc. 59; *see* Rec. Doc. 58). Prudential then replies. (Rec. Doc. 62). It argues that Mr. Jacobs has failed to address the legal basis of its motion to consider and has merely claimed that *Heimeshoff* is "unrelated." *Id*.

**III.     LAW & ANALYSIS**

    **A.     Law**

A Federal Rule of Civil Procedure 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, Rule 59(e) serves the narrow purpose of correcting manifest errors of law or fact, or presenting newly discovered evidence. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990); *Templet*, 367 F.3d at 479. "Relief under Rule 59(e) is also appropriate when there has been an intervening

change in the controlling law." *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). The United States Court of Appeals for the Fifth Circuit has noted that altering, amending, or reconsidering a judgment under Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citing *Clancy v. Empl'rs Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)). A court has "considerable discretion in deciding whether to grant or deny [such] a motion" *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). However, the Rule 59(e) standard "favors denial of motions to alter or amend." *S. Constructors Grp, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

**B. Analysis**

In *Heimeshoff*, the Supreme Court resolved a dispute among the lower courts and held that "a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable" and it is "a period less than that prescribed in the general statute of limitations." 134 S. Ct. at 610-11. This displaces the prior precedent in the Fifth Circuit which provided that "[u]nder ERISA, a cause of action accrues after a claim for benefits has been made and formally denied." *Harris Methodist*, 426 F.3d at 337. Accordingly, reconsideration is appropriate on the basis that there has been an intervening change in the controlling law.

As discussed above, the express language of the plan required Mr. Jacobs to bring this action within six years of when his proof of loss was required. As this Court previously concluded, this meant that Mr. Jacobs would have had to have brought his claims on or before June 16, 2009, which he did not do. Relying on previous precedent, this Court determined that the express language was not necessarily binding on Mr. Jacobs. However, under the Supreme Court's new rule in *Heimeshoff*, the express language presumptively controls. This presumption

7

may be overcome only if the limitations period is unreasonable or if it exceeds the applicable statute of limitations. Here, the six-year period is not unreasonable because it is far longer than the three-year period that was found to be reasonable in *Heimeshoff*, nor is it longer than the ten-year statute of limitations.[1] Thus, the limitations period is valid and enforceable.

However, *Heimeshoff* also notes that, "[i]f the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision as a defense." 134 S. Ct. at 615 (citing *Thompson v. Phenix Ins. Co.*, 136 U.S. 287 (1890)). For instance, *Thompson v. Phenix Insurance Company* provides that if "the failure of [an insured] to sue within the time prescribed by the policy . . . was due to the conduct of the [insurer], [the insurer] cannot avail itself of [a statute of] limitation." 136 U.S. at 299. There, the insured had "allege[d] that the [insurer], by its duly-authorized agents, made the promises and gave the assurances" that it intended to pay the insured's claim, but then neglected to do so. *Id*. Further, the issue of "whether the [insured] had the right to rely upon those assurances and promises . . . will depend upon the answer and the evidence at the trial." *Id*. *Heimshoff* also suggests that there may be situations where "equitable tolling may apply." 134 S. Ct. at 615 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)). *Irwin v. Department of Veterans Affairs* observes that it may apply "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 498 U.S. at 96. However, even so, "[f]ederal courts have typically extended equitable relief only sparingly." *Id*.

Here, Mr. Jacobs has alleged that he relied on misrepresentations regarding his eligibility for coverage and his rights. He has also alleged that he was not provided information he

---

[1] ERISA does not contain its own statute of limitations, requiring the application of Louisiana's ten-year statute of limitations for contract disputes because it is the "most analogous" state law. *See Kennedy v. Electricians Pension Plan, IBEW No. 995*, 954 F.2d 1116, 1120 (5th Cir. 1992).

requested about that coverage and those rights. If these assertions prove accurate, the principle of *contra non valentem agere nulla currit praescriptio* (that is, prescription may not run against a person unable to act), as expressed by *Thompson* and *Irwin*, may be applicable and forecloses dismissal at this juncture. However, Mr. Jacobs' burden remains significant. He will need to demonstrate that he did not "fail[ ] to exercise due diligence in preserving his legal rights." *Id*.

IV. **CONCLUSION**

For the forgoing reasons, **IT IS ORDERED** that Lockheed Martin's and Prudential's motions for reconsideration (Rec. Docs. 55, 57) are **GRANTED.**

**IT IS FURTHER ORDERED** that Lockheed Martin's and Prudential's motions to dismiss (Rec. Docs. 30, 31) are **DENIED IN PART** with regard to Mr. Jacobs' ERISA claim and—for the reasons previously given (Rec. Doc. 53)—**GRANTED IN PART** with regard to his conversion and loss of earnings claims.

**IT IS FURTHER ORDERED** that Mr. Jacobs' conversion and loss of earnings claims are **DISMISSED**.

New Orleans, Louisiana, this 19th day of June, 2014.

*[signature: Eldon E. Fallon]*

UNITED STATES DISTRICT JUDGE