UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KARL JACOBS | CIVIL ACTION |
| VERSUS | NO. 13-0146 |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA, ET AL. | SECTION "L" (3) |

## ORDER & REASONS

Before the Court are Defendants Prudential Insurance Company of America's ("Prudential") Motion for Judgment on the Administrative Record (Rec. Doc. 87) and Lockheed Martin Corporation's ("Lockheed Martin") Motion for Summary Judgment (Rec. Doc. 89). Having reviewed the applicable law and memoranda, the Court now issues this Order & Reasons.

**I.    BACKGROUND**

This case is before the Court as an appeal of Prudential's denial of Plaintiff Karl Jacobs' Accidental Death and Dismemberment ("AD&D") benefits claim for Total and Permanent Disability.  Mr. Jacobs was a participant in Lockheed Martin's group benefits plan ("the Plan"), which is governed by the Employee Retirement Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. (Rec. Doc. 87-1 at 2).  Mr. Jacobs avers he became totally disabled as a result of a work-related accident on May 16, 2001 and is entitled to AD&D benefits.

**II.    UNDISPUTED FACTS**

On May 16, 2001, a steel handle of a milling machine struck Mr. Jacobs in the chest, causing him to be thrown in the air and landing on the back of his right shoulder. (Rec. Doc. 87-6 at 17, 110).  The machine also caught his leg as he landed.  (Rec. Doc. 87-6 at 17, 110).  Mr. Jacobs sustained injuries to his both his shoulders and his knees.  Dr. Marleece Barber, Lockheed

Martin's company doctor, saw Mr. Jacobs and diagnosed him with a left thoracic contusion and mild cervical strain, and restricted him to light duty, including no lifting, pushing, or pulling over fifteen (15) pounds. (Rec. Doc. 87-5 at 183). Mr. Jacobs later saw Dr. James Gosey for injuries to his shoulders and knee. (Rec. Doc. 87-6 at 33). On July 31, 2002, Mr. Jacobs underwent right shoulder arthroscopy with decompression and was out of work following the surgery until the end of September 2003. (Rec. Doc. 87-5 at 107; 87-6 at 110, 169). Mr. Jacobs underwent a left knee arthroscopy on February 14, 2003, due to a tear of the medial meniscus, and underwent a left shoulder arthroscopy on May 30, 2003 due to a degenerative shoulder joint and partial rotator cuff tear. (Rec. Doc. 87-5 at 6, 133). On December 8, 2003, Mr. Jacobs underwent a right knee arthroscopy due to a torn medial meniscus and underwent a follow-up right knee arthroscopy on December 19, 2003. (Rec. Doc. 87-5 at 53-54). Mr. Jacobs underwent a right should arthroscopic surgery on November 24, 2004 due to a degenerative shoulder joint. (Rec. Doc. 87-5 at 109).

In 2006, Mr. Jacobs retained three attorneys who assisted him in pursuing his workers compensation claims related to the May 16, 2001 accident: David Benedict, Harold Bartholomew, and James Bates. (Rec. Doc. 89-4 at 4, 7). Mr. Jacobs testified that he specifically went to see Harold Bartholomew concerning the issue of whether or not he was entitled to accident and sickness insurance. (Rec. Doc. 8904 at 7). Mr. Jacobs further testified that he also asked Mr. Bates to handle this issue, but Mr. Bates told him they needed to focus on Mr. Jacobs' workers compensation claim first. (Rec. Doc. 89-4 at 8).

On August 24, 2007, The Social Security Administration ("SSA") found Mr. Jacobs disabled for the period of July 31, 2002 until January 4, 2004 because he was unable to perform a full range of sedentary work. (Rec. Doc. 87-6 at 40). Mr. Jacobs was represented by attorney

2

David Benedict during these proceedings, which included a hearing where Mr. Jacobs along with vocational expert, Karen Harrison, testified. (Rec. Doc. 87-6 at 43).  The SSA ordered the retroactive payment of disability insurance benefits for that time period.  (Rec. Doc. 87-6 at 41). The SSA also concluded that as of January 4, 2004, Mr. Jacobs had obtained medical improvement and that

> [a]fter January 4, 2004, the claimant has the following residual capacity: lift and carry 10-15 pounds occasionally; sit 6-8 hours total in an 8-hour work day, walk and/or stand 2-4 hours told in an 8-hour work day, and perform work, which does not require overhead work, knelling, crawling, squatting or climbing of ropes or ladders.

(Rec. Doc. 87-6 at 39-40).  The SSA thus held that Mr. Jacobs was not disabled as of January 4, 2004.  (Rec. Doc. 87-6 at 40).

Mr. Jacobs returned to Lockheed Martin under the SSA's return-to-work program.  Mr. Jacobs went on medical leave effective May 2, 2007 and officially retired on September 1, 2007 with medical retirement benefits and full, long-term disability.  (Rec. Doc. 87-6 at 142).  As an employee, Mr. Jacobs participated in Lockheed Martin's group benefits plan, which is governed by ERISA.  Mr. Jacobs' plan provides for AD&D benefits.  This Plan provision states:

> If, while insured under the Policy, you suffer accidental bodily injury which independent of all other causes, results in your permanent and total disability, you may receive a Permanent Total Disability Benefit at the end of 12 months you are permanently and totally disabled provided:
>
> 1. Beginning no later than 30 days after the covered accident, you are unable to perform the duties of your job, and
>
> 2. After one year and for the rest of your life thereafter you are unable to work at any job suitable to your education, training or experience or any job for which you can become qualified for by reason of education, experience, or training.

(Rec. Doc. 87-7 at 13).  The Prudential certificate of insurance that was in effect when Mr. Jacobs filed his claim for benefits states that AD&D coverage is available for Total and Permanent Disability.  (Rec. Doc. 87-1 at 4).  Under the Plan, "a person is Totally and Permanently Disabled when: (1) Total Disability exists; and (2) Total Disability is such that condition (2) of the Total Disability definition will be met for the rest of the person's lifetime." (Rec. Doc. 87-9 at 28).  Total Disability is defined as follows:

> A person is Totally Disabled when:
>
> (1) The person is now working at any job for wage or profit; and
>
> (2) Due to accidental bodily injury;
>
>> (a) the person is not able to perform, for wage or profit, the material and substantial duties of that person's occupation; and
>>
>> (b) beyond one year after the person sustains the injury, the person is not able to perform, for wage or profit, the material and substantial duties of any job for which the person is reasonably fitted by the person's education, training, or experience.

(Rec. Doc. 87-9 at 28).

Pursuant to the Plan's "Claim Rules" section, "written notice of claim must be given within 30 days after a covered loss occurs or starts, or as soon after that as possible."  (Rec. Doc. 87-7 at 22).   The Claim Rules also provide:

> Proof of Loss. In case of a continuing loss for which we make recurrent payments, the Insured Person must give us written proof of loss within 90 days after the end of each period for which an amount is payable. For any other loss, written proof must be given within 90 days after the date of loss.
> Failure to furnish proof within the time required will not void or reduce a claim if the proof is furnished as soon as it was reasonably possible to do so. Except in the event of legal incompetence, this extension of the time limit shall in no event exceed one year.

(Rec. Doc. 87-7 at 22). The Plan also states "no such [legal] action may be started later than six years from the time written proof of loss is required to be furnished." (Rec. Doc. 87-7 at 23). In a prior Order & Reasons, the Court found that Mr. Jacobs had to file his suit on or before June 16, 2009 pursuant to the terms and conditions of the Plan. (Rec. Doc. 70 at 7).

On July 19, 2009, Mr. Jacobs filed a claim for AD&D benefits for his Total and Permanent Disability caused by the May 16, 2001 accident. (Rec. Doc. 31-4, Rec. Doc. 87-6 at 142). Prudential denied the claim, averring that Mr. Jacobs did not become totally and permanently disabled as a result of the May 16, 2001 accident, independently of all other causes. (Rec. Doc. 97-6 at 143). As support for this conclusion, Prudential highlighted that

> A History & Physical completed on July 16, 2007 stated the insured had multiple joint complaints that date back to numerous injuries including a motor vehicle accident in the 1970's and a work related injury in 1993 and the injured himself attributed his difficulties due to work injuries suffered in 1993 and 2001….A disability form completed by Dr. Gosey on August 2, 2007 indicates the insured was disabled due to osteoarthritis, bilateral knee pain, bilateral shoulder pain and neck pain. The medical records support the insured became totally and permanently disabled around September 1, 2007.

(Rec. Doc. 87-6 at 142-143). Prudential concluded that Mr. Jacobs' disability did not begin within thirty (30) days of the May 16, 2001 accident. (Rec. Doc. 87-6 at 143). Prudential further noted that it received notice of Mr. Jacobs' claim for the first time on July 19, 2009, which exceeded the Notice of Claim and Proof of Loss requirements as defined in Mr. Jacobs' Group Contract. (Rec. Doc. 87-6 at 143).

Mr. Jacobs' attorney at the time, Daniel Dilzell, filed an appeal of this decision, arguing that for years following the 2001 accident Mr. Jacobs attempted to obtain a Special Accident Coverage claim form from Lockheed. (Rec. Doc. 87-6 at 14). Mr Dilzell averred that Mr. Jacobs' requests were repeatedly denied, and Lockheed's human resources director, Suzette

Archie, repeatedly told Mr. Jacobs he was not eligible for Special Accident Coverage. (Rec. Doc. 87-6 at 14-15). For this reason, Mr. Jacobs was prevented from filing a claim until July 29, 2009.

Prudential denied this appeal on March 15, 2011. As support for its denial, Prudential noted that it had reviewed Mr. Jacobs' medical records and asked Prudential's medical director to review the information received. (Rec. Doc. 87-6 at 168). Prudential's medical director concluded that while Mr. Jacobs was unable to perform the duties of his job for one year within thirty days of the accident, the medical director found that Mr. Jacobs was able to work at a job after one year of the May 16, 2001 accident and for the rest of his life thereafter. (Rec. Doc. 87-6 at 174). Specifically, the medical director relied on the SSA's determination that Mr. Jacobs was no longer disabled as of January 4, 2004 and was able to perform work until September 1, 2007, when he was declared permanently disabled. (Rec. Doc. 87-6 at 174). Further, Prudential stated "it was our medical director's opinion that part of his disability was related to degenerative joint disease (osteoarthritis), his right knee problems and his cervical and lumbar spine conditions that were not directly related to the work accident on May 16, 2001". (Rec. Doc. 87-6 at 169). The medical director thus concluded Mr. Jacobs' Total Disability on September 1, 2007 was "not related to the injuries sustained in the May 16, 2001 accident independent of all other causes." (Rec. Doc. 87-6 at 174).

Looking to the records Mr. Jacobs provided Prudential, including the results of Independent Medical Examinations ("IME") performed in 2002, 2003, and 2004, physical therapy reports, x-ray results and operative reports, Prudential determined "Mr. Jacobs was unable to work on July 31, 2001 when he went out of work to undergo surgery to his right shoulder. Following this surgery, Dr. Gosey deemed him fit to return to work on or about

September 22, 2003.  Although Mr. Jacobs was in and out of work after that date, based on the medical records of Dr. Gosey, it appears that while he was at work, Mr. Jacobs was able to perform work activities."  (Rec. Doc. 87-6 at 171).

Mr. Jacobs, through Mr. Dilzell, filed a second appeal on September 15, 2011, and Prudential denied that appeal on January 26, 2012.  In its denial, Prudential noted that it had considered Mr. Jacobs' argument that emphasized the medical director's answer to the first question in his initial appeal, when the medical director concluded Mr. Jacobs was unable to work within thirty (30) days of the accident and for one year after, independent of all other causes.  (Rec. Doc. 87-6 at 188).  Prudential thus asked another Prudential medical director to review the information, and that medical director concluded that Mr. Jacobs was not disabled within thirty (30) days of the May 16[1], 2001 accident because he returned to work at a reduced capacity and because the MRI of the right shoulder showed no major tears.  (Rec. Doc. 87-6 at 189).  Further, the medical director concluded that the accident did not render Mr. Jacobs disabled for the rest of his life and cited the SSA decision as support.  (Rec. Doc. 87-6 at 190). Prudential also highlighted Mr. Jacobs other injuries and concluded that these contributed to his disability, which began on September 1, 2007.  (Rec. Doc. 87-6 at 190).

On January 25, 2013, Mr. Jacobs filed the present action *pro se* in this Court. (Rec. Doc. 1).  Lockheed Martin and Prudential then filed separate motions for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). (Rec. Docs. 9, 18).  Mr. Jacobs filed an amended complaint on July 1, 2013, seeking benefits and coverage under the plan as a result of his total and permanent disability.  He attests that he has exhausted any required administrative remedies.  Mr. Jacobs alleges that he relied, to his detriment, on Lockheed

---

[1] Prudential and the medical director reference the accident as occurring on May 6, 2001, but the Court assumes this was a typographical error.

Martin's erroneous representations. Specifically, he alleges that he was told he was ineligible for coverage and benefits during a period in which he believes he was eligible and could have made a timely request. Mr. Jacobs also alleges that he was not sent or provided information he had requested. In sum, he asserts that his efforts to obtain coverage and benefits to which he was entitled were thwarted by both Lockheed Martin and Prudential. As a result, he seeks to recover the benefits and coverage allegedly owed to him for the period beginning in 2001, when his doctor determined he was totally disabled, through 2007, when he was terminated; benefits and coverage owed for the period beginning in 2002 through 2004, when he was receiving medical treatment; repayment of loans and interest on those loans made during periods he should have received benefits or coverage; loss of future earnings; punitive damages, and attorneys' fees and costs.

Prudential and Lockheed Martin then moved to dismiss. (Rec. Docs. 30, 31). They argued that each of Mr. Jacobs' claims were either prescribed or preempted by ERISA. On March 26, 2014, the Court entered an order granting Prudential's and Lockheed Martin's motions to dismiss with regard to the state law claims and denying it with regard to the ERISA claim. (Rec. Doc. 53). Specifically, the Court held that Mr. Jacobs' ERISA claim was not necessarily barred by a contractual, six-year limitations period that ran from the point that proof of loss was required. (*Id*. at 6-7). It based this determination on the United States Court of Appeals for the Fifth Circuit practice that "[u]nder ERISA, a cause of action accrues after a claim for benefits has been made and formally denied." (*Id*. (quoting *Harris Methodist Fort Worth v. Sales Support Services. Inc. Employee Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005)). It also noted persuasive precedent that "a limitations period that begins to run before the ERISA cause of action accrues is unreasonable *per se*." (*Id.* at 7-8 (quoting *Baptist Mem'l Hospital—DeSoto Inc. v. Crain Auto.*

8

*Inc.*, 392 F. App'x 288, 295 n.1 (5th Cir. 2010)).  In deciding that it would not be appropriate to dismiss Mr. Jacobs' claims on a Federal Rule of Civil Procedure 12(b)(6) motion, the Court observed that he faces a "significant—if not impossible—hurdle" on a Rule 56 motion, at which point the timeliness of his claim could be reevaluated. (*Id*. at 9).

Prudential and Lockheed Martin then moved for reconsideration. (Rec. Doc. 55, 57). Specifically, they argued that the United States Supreme Court's decision in *Heimeshoff v. Hartford Life & Accident Insurance Co*., 134 S. Ct. 604 (2013)—which was issued after the submission date for its motion to dismiss—changed the controlling law with regard to contractual limitations periods in ERISA plans. (Rec. Doc. 55-1 at 1). They assert that, because a contractual limitations period may be valid even if it starts to run before the cause of action accrues, the contractual, six-year limitations period at issue here necessarily bars Mr. Jacobs' ERISA claim.  The Court held that under *Heimeshoff*, the limitation period was valid and enforceable, but refused to dismiss the case because Mr. Jacobs' allegations, if proven true, would prevent Prudential and Lockheed Martin from invoking the limitations provision as a defense. (Rec. Doc. 70 at 8).  Specifically, if found to be accurate, Mr. Jacob's allegations that he relied on misrepresentations regarding his eligibility for coverage and his rights, as well as his allegation that he was not provided information he requested about that coverage and those rights, would overcome any limitations defense. (Rec. Doc. 70 at 8-9).  The Court noted, however, that "Mr. Jacobs' burden remains significant.  He will need to demonstrate that he did not 'fail to exercise due diligence in preserving his legal right.'" (Rec. Doc. 70 at 9) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

**III.	PRESENT MOTIONS**

    **A.	Lockheed Martin's Motion for Summary Judgment (Rec. Doc. 89)**

        **1.	The Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

        **2.	Law and Analysis**

It is undisputed that Mr. Jacobs failed to timely file this lawsuit within the six year contractual period (on or before June 16, 2009), so the issue is whether equitable tolling applies to the instant case. Lockheed Martin argues that the undisputed facts demonstrate that Mr. Jacobs is not entitled to equitable tolling, and Mr. Jacobs' suit is therefore time-barred.

Mr. Jacobs contends the facts are ripe for equitable tolling. In his Opposition, Mr. Jacobs argues he "conferred with a third lawyer in May 2006 and with Miss Suzette Archie and the Union President Dennis Fauver to file a claim under the Special Accident Policy to no avail as the attorney said he was back at work." (Rec. Doc. 95 at 4). Further, he argues he "secured his right to sue in 2006 when he tried to file with an attorney." (Rec. Doc. 95 at 5).

A plaintiff who has missed a filing deadline may sometimes be granted an extension under the doctrine of "equitable tolling" or "*contra non valentum*" as it is known in civilian terms. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "Equitable tolling 'applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some other extraordinary way from asserting his rights.'" *Jaso v. The Coca Cola Co.,* 435 F. App'x 346, 357 (5th Cir.2011) (quoting *Rashidi v. Am. President Lines,* 96 F.3d 124, 128 (5th Cir.1996)). *See also Baldwin v. Layton*, 300 F. App'x 321, 324 (5th Cir. 2008). Federal courts "sparingly" extend such relief. *Irwin*, 498 U.S. at 96. Further, "a plaintiff who 'fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.'" *Jaso,* 435 F. App'x at 357 (quoting *Baldwin Cnty. Welcome Ctr. v. Brown,* 446 U.S. 147, 152 (1984)). "[A] 'garden variety claim of excusable neglect' does not support equitable tolling." *Rashidi,* 96 F.3d at 128 (quoting *Irwin,* 498 U.S. at 96. "Where [the plaintiff] could have filed his claim properly with even a modicum of due diligence, we find no compelling equities to justify tolling." *Id. See generally Irwin*, 498 U.S. at 96 (noting that equitable tolling may apply where the claimant "has actively pursued his judicial remedies by filing a defective pleading during the statutory

11

period" or "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"). The United States Supreme Court and the Fifth Circuit have explicitly held that negligence on the part of counsel is insufficient to apply equitable tolling since "[u]nder our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent…." *Irwin*, 498 U.S. at 97.

Construing the facts in favor of Mr. Jacobs, the Court finds that the facts do not support an application of equitable tolling. First, it should be noted that while Mr. Jacobs alleges that Ms. Archie represented to him that he was not eligible for AD&D benefits while receiving worker's compensation, Mr. Jacobs provides *no* evidence to substantiate these claims. "Rule 56(c) mandates . . . summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "[T]here is no issue for trial unless there is *sufficient evidence* favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (emphasis added).

Even if Ms. Archie made these representations to Mr. Jacobs, the fact that Mr. Jacobs had counsel negates any justification for equitable tolling. Mr. Jacobs' Opposition stated that he conferred with counsel about filing for these benefits, but either Mr. Jacobs or Mr. Jacobs' counsel failed to do so. Further, Mr. Jacobs testified during his deposition that he saw his attorney, Mr. Bartholomew, for the specific reason of determining whether Mr. Jacobs was

entitled to benefits. (Rec. Doc. 89-4 at 7). Mr. Jacobs also testified that he consulted another attorney about these benefits. (Rec. Doc. 89-4 at 8). Moreover, despite Ms. Archie's alleged representations, Mr. Jacobs testified that he always believed he was entitled such benefits. (Rec. Doc. 89-4 at 11). Based on Mr. Jacobs own testimony, it is evident that Ms. Archie's alleged misrepresentations did not prevent Mr. Jacobs from filing suit. His failure to file suit can only be attributed to the negligence of Mr. Jacobs' attorneys or to Mr. Jacobs' himself. Finding that the undisputed facts show that the Court should not apply equitable tolling, the Court will grant Lockheed Martin's Motion for Summary Judgment and dismiss Mr. Jacobs' claims against Lockheed Martin with prejudice.[2]

> **B.   Prudential's Motion for Judgment on the Administrative Record (Rec. Doc. 87)**
>
> > **1.   The Standard**

Under ERISA, Federal courts have exclusive jurisdiction to review determinations made by employee benefit plans, including disability benefit plans. 29 U.S.C. § 1132(a)(1)(B). A district court must generally limit its review to an analysis of the administrative record. *Vega v. Nat. Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). "[A] denial of benefits challenged under § 1132(a)(1)(B) is generally reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan*." Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[W]hen an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Vega*, 188 F.3d at 295.

---

[2] Lockheed Martin also makes the argument that summary judgment is warranted because Mr. Jacobs and Lockheed Martin entered into a settlement whereby Mr. Jacobs released any claims against Lockheed Martin arising out of Mr. Jacobs' accidents in 1993 and 2001. Since the Court finds the undisputed facts do not justify equitable tolling, the Court will not address this other argument.

13

The Certificate of Insurance contains the following discretionary language:

> Transamerica Occidental Life Insurance Company[3] is the fiduciary under the plan designed to review any claim appeals with respect to the policy by the claimant and is vested with discretionary authority to determine eligibility for benefits and to construe and interpret the plan/policy terms and provisions. The decision of Transamerica Occidental Life Insurance Company with respect to eligibility and plan/policy terms is final, conclusive and binding as to all parties.

(Rec. Doc. 87-7 at 26). The Lockheed Martin Summary Plan Description also grants discretion to the insurance carriers:

> The insurance carrier for the particular benefit is responsible for determining whether benefits are payable under the Plan, determining proof of insurability matters, determining the amount of benefits, if any, payable under the Plan, and deciding appeals of denied claims….
>
> In carrying out these functions, including conducting a full and fair review of denied claims, the insurance carrier has the full discretionary authority to interpret and construe the terms of the Plan, to decide questions related to the payment of benefits, and to make any related findings of fact. The decision of the insurance carrier shall be final and binding to the full extent permitted by law.

(Rec. Doc. 87-10 at 50).

Under this deferential standard, a plan's fiduciary determination will be upheld so long as it is "supported by substantial evidence and is not arbitrary and capricious." *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 397-98 (5th Cir. 2007). The Fifth Circuit has explained that "[s]ubstantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis*

---

[3] According to Prudential, Prudential assumed Transamerica Occidental Life Insurance Company's risk effective December 1, 2002, retaining the Transamerica Certificate of insurance and Group Insurance Policy until 2005. Prudential thus acted as fiduciary and claims administrator of the AD&D plan during the pendency of Mr. Jacobs' claim.

*v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). Under this standard, a decision is arbitrary and capricious if it is made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999). "[R]eview of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on the continuum of reasonableness—even if on the low end." *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (quoting *Vega*, 188 F.3d at 297).

Under Fifth Circuit precedent, courts may apply a less deferential standard of review when the claims administration evinces a conflict of interest. "[W]hen judges review the lawfulness of benefit denials, they will often take account several different considerations of which a conflict of interest is one." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). Weighing a conflict of interest does not "impl[y] a change in the standard of review, say, from deferential to *de novo*." *Id.* at 115. "Quite simply, 'conflicts are but one factor among many that a reviewing judge must take into account,'" and "the specific facts of the conflict will dictate its importance." *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 247-48 (quoting *Glenn* 554 U.S. at 117). "In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific performance." *Glenn* 554 U.S. at 117.

> A conflict of interest should prove more important…where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy.

*Glenn* 554 U.S. at 117.  A court may afford more weight to a conflict of interest when the process employed to render the denied claim indicates "procedural unreasonableness." *Id.* 118. *See Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010) ("[A] reviewing court may give more weight to a conflict of interest, where the circumstances surrounding the plan administrator's decision suggest 'procedural unreasonableness.'"). Procedural unreasonableness describes the situation where "the method by which the plan administrator made the decision was unreasonable." *Truitt v. Unum Life Ins. Co. of America*, 729 F.3d 497, 510 (5th Cir. 2013).

      Here, a structural conflict of interest exists because Prudential both rendered a decision on Mr. Jacobs' claim and would have had to pay Mr. Jacobs' benefits and because Prudential relied on its own doctors' reviews for its claims determinations.  The Court nevertheless finds the Administrative Record shows that the process was fair and reasonable and that the structural conflict of interest did not affect the claims determination.  This is evidenced by the fact that the medical directors reviewed all of Mr. Jacobs' prior IMEs, as well as the entirety of his prior medical records and the SSA decision.  In sum, there is no indication that the structural conflict of interest in any way lead to Prudential's ultimate denial of benefits, and the Court will therefore apply the deferential arbitrary and capricious standard.

      **2.**    **Law and Analysis**

          **a.  Equitable Tolling**

     Prudential argues that the Court should grant judgment on the Administrative Record because Mr. Jacobs failed to file this lawsuit within the six-year contractual period.  The Court incorporates the equitable tolling analysis from the prior section and concludes that the facts show equitable tolling is not applicable.  The Court thus grants Prudential's motion on the basis

that Mr. Jacobs failed to file his lawsuit within the six-year contractual time period, as he filed this suit on January 25, 2013, and the Plan required him to file suit on or before June 16, 2009.

### b. Prudential's Denial of AD&D Benefits

Even if the Court applied equitable tolling, and looked at the substance of Mr. Jacobs' claim, the Court would still rule in favor of Prudential because the Administrative Record supports a determination that Prudential's denial of Mr. Jacobs' claim was not arbitrary and capricious.  Pursuant to the terms and conditions of Mr. Jacobs' Plan, to be eligible for AD&D benefits, Mr. Jacobs had to be unable to perform the duties of his job within one month of the May 16, 2001 accident *and* after one year, and for the rest of Mr. Jacobs life, he had to be "unable to work at any job suitable to [his] education, training, or experience or any job for which [he] became qualified for by reason of education, experience or training." (Rec. Doc. 87-7 at 13).  When Prudential rendered its initial decision and subsequent denials of Mr. Jacobs' appeals, Prudential emphasized that Mr. Jacobs did not satisfy the second condition.  As support for this conclusion, Prudential relied on the SSA decision that found Mr. Jacobs was disabled from July 31, 2002 until January 4, 2004 but also held that he was no longer disabled after January 4, 2004.

Prudential also relied on its conclusion that Mr. Jacobs' Total and Permanent Disability was not independently caused by the May 16, 2001 accident.  As support for this determination, Prudential highlighted Mr. Jacobs' physical completed on July 16, 2007, which stated he had multiple joint complaints that dated back to a motor vehicle accident in the 1970's and a work related injury in 1993.  (Rec. Doc. 87-6 at 142-43).   Prudential also cited Dr. Gosey's disability form which indicated Mr. Jacobs was disabled due to osteoarthritis, bilateral knee pain, bilateral shoulder pain and neck pain.  (Rec. Doc. 87-6 at 142-43).

This supporting evidence compels the Court to find Prudential's denial of Mr. Jacobs' AD&D benefits for the May 16, 2001 accident was not arbitrary and capricious because it was reasonable for Prudential to conclude that Mr. Jacobs was able to work after the May 16, 2001 accident based on the SSA decision and that the May 16, 2001 accident was not the independent cause of Mr. Jacobs' disability based on Mr. Jacobs' medical records.  Accordingly, even if the Court applied equitable tolling, the Court would not overturn Prudential's benefits determination. The Court would also like to stress that while Mr. Jacobs is not eligible for AD&D benefits, he has received, and continues to receive, long-term disability benefits since September 1, 2007.

## IV.     CONCLUSION

For the forgoing reasons, **IT IS ORDERED** that Lockheed Martin's Motion for Summary Judgment (Rec. Doc. 89) and Prudential's Motion for Judgment on the Administrative Record (Rec. Doc. 87) are hereby **GRANTED** and Mr. Jacobs' claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 31st day of July, 2015.

UNITED STATES DISTRICT JUDGE

cc:     Karl Jacobs
        200 Acadian Circle
        Slidell, LA 70460